24CA1055 Peo in Interest of APE 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1055
El Paso County District Court No. 22JV30082
Honorable Robyn Chittum, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of A.P.E., a Child,

and Concerning G.E.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE RICHMAN*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Debra W. Dodd, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 In this dependency and neglect proceeding, G.E. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with A.P.E. (the child). We affirm.

## I. Background

¶ 2 In April 2022, the El Paso County Department of Human Services (Department) filed a petition in dependency and neglect after the child tested positive for controlled substances at birth and mother admitted to illicit substance use during her pregnancy. Additional concerns arose when, shortly after giving birth, mother was incarcerated.

¶ 3 Mother admitted the allegations in the petition, and the juvenile court adopted a treatment plan. Mother's treatment plan required, among other things, that she engage in mental health and substance abuse evaluations and treatment and participate in family time with the child.

¶ 4 Mother remained incarcerated for approximately eleven months before being released. She was out of custody for approximately seven months before again being incarcerated. She remained in custody throughout the remainder of the proceedings.

¶ 5 In February 2024, the Department filed a motion to terminate parental rights alleging that she had not complied with her treatment plan and that it was unsuccessful. After a two-day evidentiary hearing, the juvenile court, in April 2024, granted the motion.

## A. Statutory Criteria and Standard of Review

¶ 6 A juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of C.H.*, 166 P.3d 288, 289 (Colo. App. 2007).

¶ 7 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law

that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 8     However, we will not disturb the court's factual findings and conclusions when they are supported by the record.  *Id.* at ¶ 32; *see also A.M.*, ¶ 15.  The credibility of the witnesses as well as the sufficiency, probative value, and weight of the evidence, and the inferences and conclusions to be drawn from it are within the court's discretion.  *A.M.*, ¶ 15.

## II.     Reasonable Efforts

¶ 9     Mother argues the Department failed to provide services to her while she was incarcerated and, therefore, the juvenile court erred when it found the Department provided reasonable efforts.  We disagree.

### A.     Relevant Law

¶ 10    Before a juvenile court may find a parent unfit, the court must consider whether the county department of human services made reasonable efforts to rehabilitate parents and reunite families.  §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  "Reasonable efforts" means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 11    Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provisions of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; and family time and placement services. § 19-3-208(2)(b).  If funding is available, a department must also provide substance abuse treatment services.  § 19-3-208(2)(d)(V).

¶ 12    The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan."  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  The parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in

treatment in determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 13 Whether a department of human services satisfied its obligation to provide reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

## B. Analysis

¶ 14 The juvenile court found that the Department made reasonable efforts to try and engage mother in her treatment plan, but that those "reasonable efforts were tempered by [mother's] ability to engage, her willingness to engage." The court further found that the Department set up family time while mother was in and out of custody; provided referrals for life skills, mental health, and substance abuse; and investigated ways mother could get evaluations and treatment while in custody. The record supports the court's findings.

¶ 15 During mother's first period of incarceration, the Department provided referrals for mental health and substance abuse

evaluations. Those evaluations were scheduled but later canceled by the Department of Corrections (DOC) facility where she was housed. Nonetheless, the caseworker continued to investigate ways to get those evaluations completed while mother was in custody.

¶ 16    The Department also repeatedly and immediately worked to set up family time visits at each DOC facility mother was transferred to. At times, there were delays and limits on the availability of family time, but those were attributable to the DOC. In fact, mother's counsel reported that the caseworker had "moved mountains" to make sure family time could start. When mother was incarcerated for a second period before the termination hearings, the caseworker again set up family time with the facility.

¶ 17    Notably, mother does not assert that the Department failed to provide reasonable efforts while she was out of custody. And despite mother being out of custody for several months during the case, mother failed to engage in any mental health evaluations and urinalysis (UA) testing. While she did complete a substance abuse evaluation, she failed to engage in any treatment. She participated in only half of her in-person family time visits. When she did

participate, there were concerns about mother's lack of engagement with the child and her mental state during the visits.

¶ 18    In sum, we reject mother's assertion because the record indicates that the Department attempted to provide mother with services throughout the case and that any lack of services was attributable to either mother's or the DOC's non-cooperation.  *See A.V.,* ¶ 12.  Under these circumstances, we cannot say the Department failed to make reasonable efforts to provide mother with services.  *See My.K.M.,* ¶ 33.

## III.    Fit in a Reasonable Time

¶ 19    Mother contends the juvenile court erred when it found she could not become a fit parent within a reasonable time because, in her view, she was to be released from custody soon after the termination hearing and could have addressed the other requirements of her treatment plan upon release.

### A.    Relevant Law

¶ 20    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care.  *People in Interest of D.P.,* 160 p.3d 351, 353 (Colo. App. 2007).  At a minimum, reasonable parental care requires that a parent provide

7

nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 9.

¶ 21     Before a court can terminate the parent-child relationship, there must be clear and convincing evidence that the parent cannot become fit within a reasonable period of time. § 19-3-604(1)(c)(III).

¶ 22     A reasonable period of time is not an indefinite time but must be considered based on the physical, mental, and emotional conditions and needs of the child. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). When determining whether a parent may become fit within a reasonable time, the "court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 23     If a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986). When, as here, a child is under six years old, the court must

consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

## B. Analysis

¶ 24 The juvenile court found that mother had a reasonable period of time to comply with her treatment plan but did not, that she continued to be unfit, and that the child could not wait any longer for mother to become fit. The court further found that giving mother additional time would be unreasonable and was not an option in this case. Last, the court found mother had not addressed her mental health or substance abuse concerns and had never been in a position to care for the child's needs. The record supports the court's findings.

¶ 25 Mother's arguments rely largely on her assertion that she was not provided reasonable efforts while incarcerated, which we have addressed and rejected above.

¶ 26 However, mother also argues that she was scheduled to enter inpatient treatment upon her release from custody, which would allegedly happen a month after the termination hearing. She

further contends that, with inpatient treatment, she could have completed her treatment plan if provided reasonable additional time upon her release. She asserts that her willingness to engage in her treatment plan is evidenced by her completion of a parenting class, a budgeting class, a substance use evaluation, and her participation in virtual family time.

¶ 27 The record shows that mother was given additional time to engage in her treatment plan but did not. The guardian ad litem filed a motion to terminate parental rights eleven months before the Department did and before mother was initially released from custody. The caseworker testified that the professionals involved in the case decided to allow mother time to get out of custody and engage with her treatment plan before moving forward with termination.

¶ 28 Despite this, as discussed above, mother failed to engage in a mental health evaluation or treatment, UA testing, and substance abuse treatment. She also had new criminal charges, no stable housing, and failed to significantly engage with her life skills worker, all of which conflicted with her treatment plan.

¶ 29     By her own admission, mother would have needed at least another six months to engage in her treatment plan even once released from custody.  She testified at termination that she was slated to enter inpatient treatment upon her release from custody.  However, she admitted that her inpatient treatment would take at least an additional six months to complete, and the child would not be allowed to reside with her during treatment.  At the time of the termination hearing, the case had already been open for two years.  *See A.J.,* 143 P.3d at 1143 (periods as short as five to nine months have been held to be sufficient to comply with a treatment plan).

¶ 30     It was also unclear if mother would realistically be released from custody shortly after the termination hearing.  Though it appears that one set of criminal charges may have soon resolved, she was also incarcerated for a parole hold and the status of the parole hold was unclear.

¶ 31     Based on this record, we conclude that the juvenile court did not err when it found that mother's conduct or condition was unlikely to improve in a reasonable time.

## IV.   Disposition

¶ 32     The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE BERNARD concur.