24CA0949 Peo in Interest of NRGV 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0949
Mesa County District Court No. 22JV90
Honorable Gretchen B. Larson, Judge

The People of the State of Colorado,

Appellee,

In the Interest of N.R.G.V., a Child,

and Concerning J.A.G.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Todd M. Starr, County Attorney, Brad Junge, Assistant Count Attorney, Grand Junction, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, J.A.G. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with N.R.G.V. (the child).  We affirm.

## I.     Background

¶ 2     The Mesa County Department of Human Services filed a petition in dependency and neglect alleging concerns about the cleanliness and safety of the family home, and mother's substance abuse and mental health.  When the petition was filed, N.R.G.V. was two years old.

¶ 3     The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan.

¶ 4     The Department later moved to terminate parental rights.  After an evidentiary hearing, the juvenile court granted the motion.

¶ 5     Mother appeals.  She contends that the juvenile court erred by determining that (1) the Department made reasonable efforts to rehabilitate her as a parent; (2) she could not become a fit parent within a reasonable time; and (3) there were no less drastic alternatives to termination.  We conclude that the record supports these findings and therefore affirm.

## II.    Standard of Review

¶ 6    A judgment terminating parental rights presents mixed questions of fact and law.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.  However, we will not disturb the juvenile court's factual findings when they are supported by the record.  *Id.* at ¶ 32; *see also A.M.*, ¶ 15.  It is the role of the juvenile court to make determinations about the credibility of the witnesses as well as the sufficiency, probative value, and weight of the evidence, and the inferences and conclusions to be drawn from it.  *A.M.*, ¶ 15.

## III.    Reasonable Efforts

¶ 7    Mother first challenges the juvenile court's conclusion that the Department made reasonable efforts to rehabilitate her and reunite her with the child.

### A.    Relevant Law

¶ 8    Before terminating parental rights under section 19-3-604(1)(c), C.R.S. 2024, a juvenile court must consider whether the

Department made reasonable efforts to rehabilitate the parent and reunite her with the child. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means the "exercise of diligence and care" to reunify parents with their children. § 19-1-103(114). Appropriate services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 9 The juvenile court must consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent is ultimately responsible for using those services to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). The court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

B.     The Record Shows the Department Made Reasonable Efforts

¶ 10     Mother asserts the Department failed to provide services to support her treatment plan goals requiring her to improve the condition of her home, get sober, and improve her mental health. In particular, she alleges that the Department failed to assist her with transportation issues that persisted throughout the case and served as a "barrier" to her ability to comply with the treatment plan.

¶ 11     In support, mother points to the testimony of her proffered expert on the subject. Mother's expert opined that the Department did not provide adequate transportation assistance or domestic violence treatment, failed to meet with mother monthly, and did not seek additional sources of funding to assist her. We discern no error.

¶ 12     First, we note that the court did not find mother's expert's testimony or report to be persuasive. And that credibility determination is solely for the juvenile court to make. *See A.M.*, ¶ 15.

¶ 13     Second, the record shows the Department offered mother multiple bus passes, assistance in cleaning her home, a family

therapy referral, multiple referrals for in-patient substance abuse and mental health treatment, and a life skills worker. Additionally, the caseworker contacted mother monthly to inquire about her treatment plan engagement.

¶ 14 Nevertheless, mother argues that any noncompliance was due to the Department's persistent failure to provide her transportation support. But the record shows mother was offered five ninety-day bus passes throughout the case and, when bus transportation proved difficult, the caseworker offered to drive mother to services. Mother acknowledged during her testimony that though the caseworker offered to transport her, she declined. The caseworker testified that while providing gas cards is another way to provide support for transportation, it was not a viable option here because neither mother nor her partner had a valid driver's license. Mother's claim that the Department's failure to provide transportation support impeded her ability to comply with family visits is also belied by the record as her noncompliance continued when she was offered virtual visits, as she attended only two of thirty-two virtual sessions offered.

¶ 15    Mother also claims that the Department did not provide domestic violence treatment. We recognize that although domestic violence was described as a concern in mother's previous relationship, her current treatment plan did not expressly address those concerns. Nevertheless, the caseworker testified that the co-occurring treatment program mother was referred to could have provided domestic violence treatment.

¶ 16    The primary concerns related to mother's substance abuse and mental health issues remained at the time of termination. Mother struggled with illicit drug use throughout the case and never attended any substance abuse or mental health treatment despite numerous Department referrals.

¶ 17    Mother further argues that the Department never sought out additional sources of funding to assist her with services. But she cites no law, and we are aware of none, that would require the Department to do so as part of its obligation to provide reasonable efforts under section 19-3-208.

## IV. Fit Within a Reasonable Time

¶ 18     We next consider and reject mother's assertion that the court

erred by finding she could not become a fit parent withing a

reasonable period of time.

## A. Relevant Law

¶ 19     Another prerequisite to termination is a determination by clear

and convincing evidence that the parent is unfit and cannot become

fit within a reasonable period of time.  § 19-3-604(1)(c)(III).

¶ 20     An unfit parent is one whose conduct or condition renders the

parent unable or unwilling to give a child reasonable parental care.

*People in Interest of D.P.,* 160 p.3d 351, 353 (Colo. App. 2007).  At a

minimum, reasonable parental care requires that a parent provide

nurturing and protection adequate to meet the child's physical,

emotional, and mental health needs.  *People in Interest of S.R.N.J-S.,*

2020 COA 12, ¶ 9.

¶ 21     A reasonable period of time is not an indefinite time but must

be considered based on the physical, mental, and emotional

conditions and needs of the child.  *People in Interest of A.J.,* 143

P.3d 1143, 1152 (Colo. App. 2006).  When determining whether a

parent can become fit within a reasonable time, the "court may

consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 22    If a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986). When, as here, a child is under six years old when a petition is filed, the court must consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123(1)(a), 19-3-702(5)(c), C.R.S. 2024.

### B.    The Record Shows Mother Could Not Become Fit Within a Reasonable Time

¶ 23    The juvenile court found that mother was unfit and could not become fit in a reasonable time because she had eighteen months to comply with her treatment plan and had made no progress towards sobriety during that time. Mother contends this was error because she made significant efforts to address her treatment plan

objectives, such as attending family time when she had transportation and completing two co-occurring assessments. Based on this, she contends that she could have made meaningful progress in an additional six months.

¶ 24     We recognize that mother consistently attended family time in the beginning of the case, and those visits reportedly went well. However, her attendance significantly decreased as the case progressed. And while most of the in-person family time visits went well, they were not without reported safety concerns.

¶ 25     It is also true that mother completed two co-occurring assessments, but she never followed through with any treatment for her substance abuse or mental health concerns.

¶ 26     The caseworker testified that not only had mother failed to address the problems that caused the case to open, but she was also "a little bit worse off" at the time of termination than she was at the beginning of the case a year and a half prior.

¶ 27     Given these supported findings and considering that this was an EPP case, we cannot say that the court erred by finding that mother could not become a fit parent after giving her a year and a half to work on her treatment plan.

## V.    Less Drastic Alternatives

¶ 28    Lastly, we address mother's challenge to the juvenile court's finding that there were no less drastic alternatives to termination.

### A.    Relevant Law

¶ 29    The juvenile court must consider and eliminate less drastic alternatives before terminating parental rights.  *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986).  In doing so, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35.

¶ 30    If the court considers a less drastic alternative but finds that termination is in the child's best interests, it must reject the proposed alternative and order termination.  *Id.* at ¶ 32.  Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can be assured only by adoption.  *S.N-V.*, 300 P.3d at 920.

### B.    The Record Shows There Was No Less Drastic Alternative

¶ 31    The juvenile court found that the child needed "stability, permanency, predictability, structure, and routine" and that termination was in the child's best interests.

10

¶ 32    Mother points out that the placement provider testified they would be willing to retain placement of the child if the court did not terminate parental rights.  Mother also notes that she had a strong bond with her child.  Consequently, she contends, it would have been in the child's best interests to maintain an ongoing relationship with her.

¶ 33    But mother's assertion ignores other testimony from the placement provider and the caseworker.  The placement provider stated that they would prefer to adopt the child.  And the caseworker testified that she believed it was in the child's best interests to have permanency.  The caseworker further reported that the child was flourishing in his current placement, and that the current placement could reliably meet the child's needs in a home that was free of substances.

¶ 34    We conclude that the court considered and eliminated less drastic alternatives and there is record support for the court's finding that termination was in the child's best interest.  *B.H.*, ¶ 80.

VI.    Disposition

¶ 35    The judgment is affirmed.

JUDGE TOW and JUDGE SCHUTZ concur.

11