24CA0477 Peo in Interest of EH 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0477
El Paso County District Court No. 21JV380
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.H., a Child,

and Concerning S.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Graham* and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     S.B. (mother) appeals the judgment terminating her parent-child legal relationship with E.H. (the child).  We affirm.

## I.     Background

¶ 2     In June 2021, law enforcement officers contacted mother, arrested her on an active warrant, and found methamphetamine in her backpack.  They also observed that the child was extremely dirty, did not have proper footwear, and had splinters in his feet that had become infected.  The El Paso County Department of Human Services (Department) assumed temporary legal custody of the child and filed a petition in dependency and neglect.  Mother admitted the allegations in the petition, and the juvenile court adjudicated the child dependent and neglected.

¶ 3     In August 2021, the juvenile court adopted a treatment plan for mother that required her to (1) support the child and build a relationship with him; (2) determine what type of commitment she could make to the child and what role she would have in the child's life; and (3) abstain from further criminal activity and comply with her criminal cases.  In November 2021, mother was released from the county jail, and the Department proposed an amended treatment plan, which required her to (1) cooperate with the

Department and professionals; (2) attend family time; (3) address her substance abuse issues; (4) become self-sufficient; (5) develop parenting skills; and (6) demonstrate parental protective capacity. The court adopted the amended treatment plan in December 2021.

¶ 4 A few months later, the Department learned that mother had relocated to Missouri to address an open criminal case that she had in that state. Mother was sentenced to probation, but after she failed to comply with her probation sentence, the Missouri criminal court revoked probation and resentenced her to a five-year probationary sentence, along with drug court. Only a few months after she was resentenced, mother absconded from probation supervision, until she was eventually arrested and resentenced to prison.

¶ 5 In September 2023, the Department moved to terminate mother's parental rights. The juvenile court held an evidentiary hearing on the motion in January 2024. After hearing the evidence, the court granted the Department's motion and terminated mother's parental rights.

## II.  Discussion

¶ 6    Mother asserts, for the three reasons described below, that the juvenile court erred by terminating her parental rights.  We disagree with all three contentions.

### A.  Termination Criteria and Standard of Review

¶ 7    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

¶ 8    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also People in Interest of A.S.L.*, 2022 COA 146, ¶ 8 (applying the same standard of review to whether a department of human services satisfied its obligation to make reasonable efforts).  We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## B. Treatment Plan

¶ 9 Mother first asserts that the juvenile court violated her due process right to a fundamentally fair proceeding when it terminated her parental rights based on noncompliance with the original treatment plan that had not been in effect for two years. As explained below, we decline to address mother's contention because she invited the error.

¶ 10 "The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case; the party must abide the consequences of his or her acts." *People v. Rediger*, 2018 CO 32, ¶ 34. The invited error doctrine applies to errors implicating constitutional rights. *See Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002); *see also Montoya v. People*, 2017 CO 40, ¶ 35 (noting that "the constitutional requirement that the prosecution prove the elements of a crime beyond a reasonable doubt" does not foreclose a defendant's loss of the right to demand such proof because of the defendant's own conduct). But it nevertheless applies in only a narrow range of cases in which the error results from trial strategy and not mere oversight. *Rediger*, ¶ 34.

¶ 11    During the caseworker's testimony, the juvenile court pointed out to the county attorney that the Department's termination motion only mentioned the original treatment plan and not the amended treatment plan.  As a result, the court said that it had only "prepped" for the original treatment plan and therefore the court had concerns that there may be a due process issue based on lack of notice to mother.  *See A.M.*, ¶ 18 (noting that, in a termination proceeding, due process requires that a parent be given notice of the allegations); *see also People in Interest of T.D.*, 140 P.3d 205, 218 (Colo. App. 2006) ("A motion to terminate is sufficient so long as it is couched in the statutory language set forth" in section 19-3-604(1)(c).), *abrogated on other grounds by People in Interest of A.J.L.*, 243 P.3d 244 (Colo. 2010).

¶ 12    Even though mother's counsel admitted that he knew about the amended treatment plan and that he was prepared to address both treatment plans, counsel still asserted that mother would suffer prejudice if the juvenile court allowed the Department to present evidence related to the amended treatment plan.  *See People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007) ("A parent may not obtain relief on a due process claim absent a

5

showing of harm or prejudice."). Therefore, mother's counsel requested that the court either (1) "restrict arguments against noncompliance relating to the amended treatment plan" and "focus on the treatment plan listed in the motion" or (2) continue the hearing to allow the Department to file an amended motion.

¶ 13     Although mother's counsel admitted that he was "aware" of the amended treatment plan and was prepared to address both treatment plans, the juvenile court nevertheless agreed with mother's request because counsel "represent[ed] that he had prepared his case on how the motion was drafted." The court then gave the Department the option to proceed under the original treatment plan or continue the hearing, and the county attorney chose the latter. After hearing the evidence, the court found that mother's treatment plan was appropriate and that she had failed to comply with it.

¶ 14     On appeal, mother asserts that the juvenile court could not terminate her parental rights based on a treatment plan that was no longer in effect at the time of the termination hearing. In the alternative, she contends that, even if the court could consider the original treatment plan, that treatment plan was inappropriate

because it was intended for an incarcerated parent. But, as described above, mother requested the course of action that created these issues. In other words, because the Department was not allowed to present its case as intended, mother could not complain about its reliance on the original treatment plan. And mother does not assert on appeal that her counsel's actions were inadvertent; rather, counsel clearly believed that it was to mother's advantage to limit the Department's presentation of its case. *See Rediger*, ¶ 34. In sum, mother invited the error that she now asks us to correct, and we decline to address her contention because she must "abide the consequences" of her acts. *Id.*

## C. Reasonable Efforts

¶ 15 Mother contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the child. We disagree.

### 1. Applicable Law

¶ 16 Before a juvenile court may find a parent unfit, the county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means

the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 17     Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).

¶ 18     The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  But the parent is ultimately responsible for using the services to comply with the plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).  The court may consider a parent's unwillingness to participate in treatment in

determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

### 2. Analysis

¶ 19 The juvenile court found that the Department made reasonable efforts to rehabilitate mother and reunify her with the child, which included providing a phone and bus passes, making referrals for substance abuse treatment, and paying for treatment services in Missouri. However, the court determined that, because mother did not use the services provided by the Department, she did not become a fit parent in a reasonable time.

¶ 20 The record supports the juvenile court's findings. The caseworker testified that mother was incarcerated in the county jail for the first few months of the case and after she was released, mother did not contact the Department for several months. Eventually, the Department located mother in Missouri and arranged for her to have virtual visits with the child. The record also shows that mother began serving a probation sentence in Missouri, which required her to engage in substance abuse treatment. Mother's probation officer testified that the Department was paying for mother's services, but she did not comply with her

treatment and continued to test positive for illegal substances. Mother eventually disengaged from her probation requirements, but the Department continued to engage mother in visits (when she was responsive) until July 2023.

¶ 21 Despite this record, mother maintains, for the following three reasons, that the juvenile court erred by finding that the Department made reasonable efforts. We are not persuaded.

¶ 22 First, relying on unsworn statements made during various court hearings throughout the case, mother asserts that the Department failed to identify and monitor treatment providers. But these statements are not evidence, and the juvenile court could not properly consider them at the termination hearing. Therefore, we cannot consider these statements on appeal. And the evidence presented at the termination hearing otherwise shows that the Department arranged treatment services for mother through her probation officer in Missouri and provided virtual visits supervised by the foster mother or a professional provider. We therefore discern no error.

¶ 23 Second, based on her own testimony at the termination hearing, mother asserts that the "caseworkers rarely took her calls

or responded to her messages," and as a result, she was prevented from attending family time. But the juvenile court did not find mother's testimony credible. Rather, it found credible the caseworker's testimony that mother (1) had not reached out to her for nearly a year and (2) did not need to contact the caseworker to schedule visits because her referral remained open. Because credibility determinations are left to the court's sound discretion, we discern no error in its findings. *See A.J.L.*, 243 P.3d at 249-50.

¶ 24    Finally, we reject mother's assertion that the Department failed to make reasonable efforts to arrange family time for her during her most recent incarceration in the Missouri prison system. The record shows that mother was incarcerated in December 2023, or just over a month before the termination hearing. The caseworker said that the Department's incarcerated parent liaison had attempted to contact mother's case manager at the prison but made contact just a few days before the termination hearing. The caseworker said that the Department had not been able to set up visits yet as a result. Therefore, the record shows that, although the Department had not arranged visits, it had attempted to do so. *See People in Interest of E.D.*, 2025 COA 11, ¶ 3 (concluding that a

department can satisfy its reasonable efforts obligation by making available and providing appropriate therapeutic family time services "even if those services don't successfully result in face-to-face contact"). Under those circumstances, we discern no error.

¶ 25    In sum, the record supports the juvenile court's findings that (1) the Department provided mother with the appropriate resources to engage with her treatment plan, but (2) she did not take advantage of those resources and was unsuccessful in becoming fit. *See A.V.*, ¶ 12; *J.C.R.*, 259 P.3d at 1285. We therefore discern no error in the court's conclusion.

## D.    Fit Within a Reasonable Time

¶ 26    Mother argues that the juvenile erred by finding that she could not become fit within a reasonable time. We disagree.

## 1.    Applicable Law

¶ 27    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.,* 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions.

*People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 28 When determining whether a parent's conduct or condition is likely to change in a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986).

¶ 29 The determination of a reasonable period is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007); *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. However, a reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶ 24. As in

this case, when a child is under six years old, the juvenile court must also consider the EPP provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

## 2. Analysis

¶ 30 The juvenile court found that mother's conduct or condition was unlikely to change in a reasonable time, noting that "things [were] worse off now than they were roughly a year ago." In support, the court found that mother continued to "minimize the impact of substance use" on the child and had not made sufficient progress in her treatment to address the concerns that initiated the case. The court also considered evidence that the child "urgently" needed treatment for Hepatitis C, which he could not get until he was in a stable home.

¶ 31 The record supports the juvenile court's findings. As noted, the record shows that mother did not successfully engage in substance abuse treatment or participate in family time for significant periods of the case. And because mother did not comply with her probation sentence, she was resentenced to prison and would not be eligible for parole until 2026. Foster mother reported

14

that the child could not begin the medication he needed to cure his Hepatitis C until he had a stable placement of more than six months. The caseworker also opined that mother could not become fit within a reasonable time for this child, considering the lack of engagement overall.

¶ 32    Nevertheless, mother maintains that the record shows that she could become fit within a reasonable time. Specifically, she directs our attention to evidence that she had not used illegal substances for several months, was exercising parenting time with her other child, had taken steps to address domestic violence issues, and had been employed during the case. But some of mother's argument again relies on her testimony, which, as stated above, the juvenile court did not find credible. *See A.J.L.*, 243 P.3d at 249-50. And mother's argument would otherwise require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See S.Z.S.*, ¶ 29. Rather, because the record supports the court's findings, we will not disturb the court's determination that mother was unlikely to become fit within a reasonable time.

## III. Disposition

¶ 33 The judgment is affirmed.

JUDGE GRAHAM and JUDGE TAUBMAN concur.