The PEOPLE of the State of Colorado, In the Interest of: R.B.S., Child,

Upon the Petition of the Washington County Department of Social Services, Petitioner-Appellee,

and concerning

D.L.S.S., Respondent-Appellant.

No. 85CA0208.

Colorado Court of Appeals, Div. III.

Jan. 16, 1986.

Rehearing Denied March 13, 1986.

Paynter & Hoyer, Kevin L. Hoyer, Akron, for petitioner-appellee.

Allen J. Kincaid & Associates, Andrew J. Cook, Christina C. Bauer, Brush, for respondent-appellant.

Steven E. Shinn, Yuma, guardian ad litem.

VAN CISE, Judge.

Respondent, D.L.S.S. (mother), appeals the termination of her parent-child relationship with her son, R.B.S. (child). We affirm.

The child was born July 17, 1983. Ten days later, on July 27, a petition was filed by petitioner, Washington County Department of Social Services (social services), alleging that the child was dependent and neglected as defined in § 19-1-103(20), C.R.S. (1985 Cum.Supp.). Social services alleged that the mother had not properly cared for the child, the child had lost approximately 11 ounces after being discharged from the hospital, the mother had allowed the child's umbilical and circumcision scars to become infected, and the mother was incoherent and psychologically unable to care for the child. The child was immediately removed from the mother's care and placed in the custody of social services.

On January 18, 1984, the child was adjudicated neglected and dependent. The court found all the allegations of the petition supported by a preponderance of the evidence. It also found that, at the time the child was removed from the home, his life was endangered. Further, it found it would be dangerous for the child if he were returned to the mother because of her mental illness and inability to recognize and address the child's problems. The court ordered temporary legal custody to remain with social services. See § 19-1-103(19)(a), C.R.S. (1978 Repl.Vol. 8).

On February 28, 1984, a dispositional hearing was held and the court approved a treatment plan proposed by social services. It provided that the mother should secure the care of a psychiatrist as well as a local physician to maintain contact and administer medication, work regularly with a psychotherapist, participate in parenting courses, continue weekly visitation with the child, and show positive changes over a year's time. It also required the mother to secure a regular income, adequate permanent housing, and the live-in assistance of a capable person. In addition, the court asked a doctor from a child abuse center to provide further assessments of the mother's progress.

On August 2, 1984, social services filed a motion for termination of the parent-child relationship. A hearing was held on December 3, and the court ordered that her parent-child relationship be terminated.

### I.

■ We disagree with the mother's contention that the evidence failed to establish that her parent-child relationship should be terminated. The evidence was clear and convincing, as required by *People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982), and was essentially unrefuted. It supported the trial court's findings and conclusions that the mother showed no reasonable effort to comply with the treatment plan, that she is unfit as a parent, and that her conduct or condition is unlikely to change within a reasonable time. These supported findings and conclusions are sufficient under § 19–11–105(1)(b), C.R.S. (1978 Repl. Vol. 8) to justify termination. *See People in Interest of M.H.*, 683 P.2d 807 (Colo. App.1984).

### II.

■ Also, we do not find any evidence to support the mother's claim that her due process rights were violated when social services restricted her visitations with the child during the period May through September 1984. Her rights to visit were not terminated, as she alleges; they were reduced, with certain restrictions placed on visits. The mother failed to show for scheduled appointments, came in when no visitation was scheduled, and at one point became physically violent with her caseworker. After that, the mother was asked to contact the social services office through her attorney or therapist, which she did not do until September. This situation was specifically provided for in the treatment plan, as follows:

> "[The] frequency [of visitations] is dependent on [the mother's] continued cooperation and on her non-threatening behavior. Occasions on which she attempts or threatens to take the child away from the meeting place, or when she is more than moderately offensive or aggressive with foster parents or staff members, may serve to change the character of the visits in a negative direction."

### III.

■ The mother finally argues the treatment plan was supposed to last a year, and the court erred by approving termination in less than a year. Again, we disagree.

The treatment plan stated that "the course of the treatment plan shall initially cover a projected time of one year," during which time regular contact was to be maintained among the mother, social services, and service providers. Since a complete breakdown in that communication system occurred, and the mother showed no signs of complying with the treatment program in any way, it was not inappropriate for the court to order termination of her parent-child relationship before the year of proposed treatment had ended.

Judgment affirmed.

KELLY and METZGER, JJ., concur.