21CA0619 Peo in Interest of LD 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0619 Jefferson County District Court No. 20JV41 Honorable Lindsay VanGilder, Judge The People of the State of Colorado, Appellee, In the Interest of L.D., a Child, and Concerning R.S. and L.S.D., Appellants. JUDGMENT AFFIRMED Division V Opinion by JUDGE DUNN Welling and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant City Attorney, Golden, Colorado, for Appellee Gina G. Bischofs, Guardian Ad Litem Law Offices of Brittany Radic, LLC, Brittany Radic, Aurora, Colorado, for Appellant R.S. Bergner Law Office, LLC, Stephanie Bergner, Leif Ericson, Carbondale, Colorado, for Appellant L.S.D. 
1 ¶ 1 R.S. (mother) and L.S.D. (father) appeal the judgment terminating the parent-child legal relationship with L.D. (the child). We affirm. I. Background ¶ 2 In January 2020, the Jefferson County Division of Children, Youth and Families filed a dependency and neglect petition regarding the then-newborn child. The Division alleged that mother and the child had tested positive for methamphetamine when the child was born and that the child was experiencing withdrawal symptoms. The Division also alleged that — while at the hospital — the parents “went into a restroom for 45 minutes” and mother’s urine drug screen “was later tampered with.” ¶ 3 The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for both parents. ¶ 4 The Division later moved to terminate the parents’ rights. And in February 2021, following a hearing, the juvenile court granted the motion. 
2 II. Termination of Parental Rights A. General Law ¶ 5 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2021; People in Interest of E.S., 2021 COA 79, ¶ 10. ¶ 6 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. “We review the juvenile court’s findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support.” People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. But we review de novo the juvenile court’s legal conclusions based on those facts. Id. 
3 B. Sufficient Time ¶ 7 Mother and father contend that the juvenile court failed to provide them sufficient time to comply with their treatment plans. We disagree. ¶ 8 Once the juvenile court approves an appropriate treatment plan, it must give the parent a reasonable time to comply with it. People in Interest of D.Y., 176 P.3d 874, 876 (Colo. App. 2007). What constitutes a reasonable time to comply is fact-specific and varies from case to case. Id. But a reasonable time is not indefinite and must be determined by considering the child’s physical, mental, and emotional conditions and needs. People in Interest of J.C.R., 259 P.3d 1279, 1284 (Colo. App. 2011). ¶ 9 The juvenile court found that the parents hadn’t shown “any reasonable compliance” with their treatment plans, noting “[t]here have been virtually no [urinalysis tests], no treatment, and nothing to address the concerns about the parties’ [substance abuse].” And it observed that “methamphetamine addiction is not something that disappears or goes away without any work, and there has been no evidence of completed sessions or treatment that would address that problem or concern.” Given the parents’ overall minimal 
4 engagement, the court found that additional time was unlikely to change their parental fitness and treatment plan compliance. ¶ 10 The record supports these findings. Mother had approximately eight months and father had approximately nine months to comply with their respective treatment plans before the termination hearing. See People in Interest of A.J., 143 P.3d 1143, 1152 (Colo. App. 2006) (“[P]eriods as short as five to nine months have been held to be sufficient time to comply with a treatment plan.”). Yet neither parent had demonstrated sobriety or participated in substance use treatment. And given the lack of any meaningful progress, that the court terminated the parent-child relationship before the estimated completion date of the treatment plans (May 2021) doesn’t mean the parents weren’t given enough time. See People in Interest of R.B.S., 717 P.2d 1004, 1006 (Colo. App. 1986) (a court may terminate the parent-child relationship before the proposed period of treatment has ended). ¶ 11 Both parents argue, however, that the amount of time to comply wasn’t sufficient given difficulties stemming from the COVID-19 pandemic. But the case opened before the pandemic started. And the evidence shows no identified pandemic-related 
5 barrier. In fact, when asked, the parents told the caseworker that “they had all the resources they needed” and “there were no barriers.” ¶ 12 To the extent mother argues there was no evidence that the child’s physical, mental, and emotional needs would be impacted by providing her with additional time to comply, we disagree. The juvenile court found — with record support — that “the entirety of this child’s one year of life has been outside of his biological parents[’] care,” a year “is a very long time for a child this young,” and the child was “thriving in the foster home.” And the caseworker confirmed that the child had bonded to his caregivers and it was in his best interest to terminate parental rights so he could be “free to adopt.” See People in Interest of K.B., 2016 COA 21, ¶¶ 37, 40 (rejecting mother’s argument that it was in the children’s best interests to give her more time to complete her treatment plan because the record adequately supported the court’s finding that the need for permanence outweighed any risk of terminating the parent-child relationship). 
6 ¶ 13 For these reasons, we reject the parents’ contention that the court did not give them sufficient time to comply with their treatment plans. C. Reasonable Efforts ¶ 14 Mother and father also contend that the juvenile court erred by finding that the Division made reasonable efforts to rehabilitate them. In particular, they argue that the Division failed to provide resources related to housing and technological assistance to enable them to participate in virtual treatment and visitation. ¶ 15 The Division says we should not consider this argument because the parties did not raise it before the termination hearing, and thus it is not preserved. ¶ 16 To be fair, divisions of this court disagree on whether a parent must challenge the Division’s reasonable efforts before the termination hearing to preserve the issue for appellate review. Compare People in Interest of S.N-V., 300 P.3d 911, 916 (Colo. App. 2011) (holding that a parent’s failure to object to services does not bar appellate review of a reasonable efforts findings), with People in Interest of D.P., 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to 
7 object to services provided before the termination hearing). Because the outcome is the same either way, we elect to consider the parents’ reasonable efforts argument. ¶ 17 The state must make reasonable efforts to rehabilitate parents and reunite families following the out-of-home placement of abused or neglected children. §§ 19-1-103(114), 19-3-100.5, 19-3-
604(2)(h), C.R.S. 2021. “Reasonable efforts” means “the exercise of diligence and care” to reunify parents with their children. § 19-1-
103(114). ¶ 18 Services provided in accordance with section 19-3-208, C.R.S. 2021, satisfy the reasonable efforts standard. See § 19-1-103(114). Among the services required under section 19-3-208 are screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; visitation services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter. § 19-3-208(2)(b). Parents, however, are responsible for using the services to obtain the necessary assistance to comply with their treatment plans. J.C.R., 259 P.3d at 1285. 
8 ¶ 19 The record supports the juvenile court’s finding that the Division made reasonable efforts to provide rehabilitative services to the parents and those efforts had not been successful. Indeed, it’s largely undisputed that the Division devised treatment plans for the parents, referred them for substance abuse treatment and sobriety monitoring, gave them bus passes and resources for homeless shelters, coordinated in-person and virtual visits, and facilitated placement services for the child. ¶ 20 Even so, the parents argue that when the visits and treatment services went virtual because of the COVID-19 pandemic, they were unable to participate because they didn’t have reliable telephone, computer, or internet access. But nothing in the record shows that either parent reported any trouble accessing virtual services. In fact, the caseworker testified that neither parent asked for assistance with internet service or access to a telephone or computer. Rather, the caseworker said that she asked the parents about barriers to participating in treatment or visits throughout the case, and they confirmed that “they had all the resources they needed” and “there were no barriers.” The caseworker also explained that mother responded to her by email and a text 
9 messaging app that required internet service. And the caseworker stated that the parents never asked for a device or a “hot spot” to assist them with virtual visits. The caseworker further testified that if the parents had told her that they needed internet service, she “could have addressed it.” For instance, when the parents raised a transportation issue, the Division provided them with bus passes. ¶ 21 Mother also contends the Division failed “to provide reasonable efforts” in “the area of housing” — specifically, that the Division failed to provide her “housing vouchers.” But the caseworker explained that the Division couldn’t provide housing vouchers unless a parent was employed and demonstrating sobriety (which neither parent did). Still, the caseworker testified that she talked with mother about resources for homeless shelters and other housing options. But it was up to mother to access those services. See J.C.R., 259 P.3d at 1285. ¶ 22 And, finally, though mother contends that the Division failed to provide adequate visitation services because the pandemic required that some of the visits occur virtually, we are unpersuaded for a couple of reasons. First, the Division never stopped providing visitation services. Though the pandemic required the Division to 
10 move to virtual visits to protect the child as well as the parents and caregivers, the Division still coordinated virtual visitation services. But the parents did not consistently attend. Second, despite the pandemic, there were periods throughout the case when the parents had the opportunity for in-person visits. Nonetheless, the parents still missed multiple visits. ¶ 23 For these reasons, we conclude the record supports the juvenile court’s finding that the Division made reasonable efforts to rehabilitate the parents. D. Less Drastic Alternatives ¶ 24 Finally, we reject father’s contention that the juvenile court erred by failing to consider the less drastic alternative of allowing him “more time to complete treatment.” ¶ 25 The juvenile court must consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. People in Interest of L.M., 2018 COA 57M, ¶ 24. “[A] less drastic alternative analysis considers whether any placement, short of termination, would be in the child’s best interest.” People in Interest of A.R., 2012 COA 195M, ¶ 44 (emphasis added). 
11 ¶ 26 But father doesn’t argue that the court overlooked an alternative placement that would have allowed it to end the dependency and neglect action without terminating his parental rights. Instead, he contends that the juvenile court should have given him more time to become a fit parent. We therefore construe father’s contention as a challenge to the juvenile court’s finding that his conduct or condition was unlikely to change within a reasonable time. See § 19-3-604(1)(c)(III) (providing that a juvenile court may not terminate parental rights unless it finds, by clear and convincing evidence, that the parent’s conduct or condition is unlikely to change in a reasonable time). ¶ 27 In determining whether a parent’s conduct will meet the child’s needs within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent’s social history, and the chronic or long-term nature of the parent’s conduct or condition. People in Interest of D.L.C., 70 P.3d 584, 588-89 (Colo. App. 2003). A reasonable time is relative, not indefinite, and it’s determined by the child’s physical, mental, and emotional conditions and needs. A.J., 143 P.3d at 1152. 
12 ¶ 28 Because the child was less than six years old when the petition was filed, the expedited permanency planning (EPP) provisions applied. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2021. The EPP provisions require that the child be placed in a permanent home as expeditiously as possible. § 19-3-702(5)(c), C.R.S. 2021. ¶ 29 The juvenile court found that father had “ample” time to complete his treatment plan, that he exhibited “the same problems without any adequate improvement,” and that no “additional period of time” would allow for the successful completion of the plan. As a result, the court found that father was unfit and his conduct or condition was “unlikely to change within a reasonable amount of time.” ¶ 30 The record supports these findings. The case had been open for over a year, and father had not resolved the substance use issues that led to the Division’s involvement. Although father completed the substance abuse evaluation, he didn’t participate in the recommended treatment or consistently engage in sobriety monitoring. He completed only two urine screens, one of which was positive for methamphetamine. Because father hadn’t successfully addressed his substance use concerns, the caseworker opined that 
13 “he is not a safe and sober caregiver” and “he might not be able to meet [the child’s] immediate emotional or physical needs if he is under the influence.” And beyond his continuing substance use, father was also equally unsuccessful with other aspects of his plan. He remained unemployed and attended less than half of the scheduled visits. When he attended in-person visits, he didn’t bring diapers or food for the child. His last in-person visit was in September 2020, and his last virtual visit was several weeks before the termination hearing. ¶ 31 And as we’ve explained, the juvenile court was required to place the child in a permanent home “as expeditiously as possible.” § 19-3-702(5)(c). At the time of the termination hearing, the child had been in a foster home for approximately one year. ¶ 32 Given this evidence, we conclude the record supports the juvenile court’s findings that father’s condition was unlikely to change in a reasonable amount of time. III. Conclusion ¶ 33 We affirm the judgment. JUDGE WELLING and JUDGE YUN concur.