24CA1968 Peo in Interest of AD 04-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1968
Mesa County District Court No. 23JV76
Honorable Jeremy Chaffin, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.D., E.D., T.D., and S.D., Children,

and Concerning K.D.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie L. Burt, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

¶ 1     K.D. (mother) appeals the judgment terminating her parent-child legal relationships with A.D., E.D., T.D., and S.D. (the children).  We affirm.

## I.     Background

¶ 2     In 2021, mother traveled to Florida with her younger children, T.D. and S.D., while the older children, A.D. and E.D., remained in Colorado with paternal grandmother.  Shortly after their arrival, a department in Florida received a report that mother had overdosed in a hotel bathroom while the younger children were in an adjacent bedroom.  The Florida department filed a petition in dependency, a Florida court adjudicated the younger children dependent, and the court adopted a treatment plan for mother.

¶ 3     In 2022, the Florida court allowed the parents to move back to Colorado with the children and reside with paternal grandmother and the other two children.  However, in February 2023, mother had to leave paternal grandmother's home because she tested positive for substances.  Then, in July 2023, the Mesa County Department of Human Services (Department) received a report that police had discovered drugs in mother's home while the older children were visiting her there.  The Department also had

information that police had arrested the children's father following a domestic violence incident with mother. Based on this information, the Department filed a petition in dependency or neglect as to the older children.

¶ 4 The juvenile court adjudicated the older children dependent or neglected and adopted a treatment plan for mother that required her to (1) attend family time; (2) address her mental health and substance abuse issues; (3) participate in family therapy; (4) engage in a domestic violence evaluation and treatment; (5) maintain stable housing and employment; and (6) cooperate with the Department and the professionals. Around the same time, the Florida court transferred the case involving the younger children to Colorado, and the juvenile court amended mother's treatment plan in the Florida case to match the one adopted in the older children's case.

¶ 5 In April 2024, the Department moved to terminate mother's parental rights. Soon thereafter, the juvenile court consolidated the two cases and set the matter for a single termination hearing. After considering the evidence presented at the hearing, the court granted the Department's motion and terminated the parent-child legal relationships between mother and the children.

## II. Discussion

¶ 6 Mother asserts that the juvenile court erred by (1) finding that she could not become fit in a reasonable time and (2) declining to increase her family time. We disagree.

### A. Termination Criteria and Standard of Review

¶ 7 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 8 Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also People in Interest of E.D.*, 2025 COA 11, ¶ 13 (applying the same standard of review to whether a department made reasonable efforts to provide a parent with family time). We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

3

## B. Fitness Within a Reasonable Time

¶ 9    Mother asserts that the juvenile court should have given her more time to become fit because she partially complied with her treatment plan. We discern no error.

¶ 10    A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs" and may "be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008). Although absolute compliance with a treatment plan is not required, even substantial compliance might not be sufficient to correct or improve the parent's conduct or condition or to render the parent fit. *People in Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005).

¶ 11    When deciding whether a parent can become fit within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time

to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986).

¶ 12 The determination of a reasonable period is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007); *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. However, a reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶ 24. As in this case, when a child is under six years old, the juvenile court must also consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

¶ 13 The juvenile court concluded that mother had not substantially complied with her treatment plan, she was unfit, and her conduct or condition was unlikely to change within a reasonable time. Specifically, the court found that mother had not made any effort to comply with her treatment plan until the "last minute" and those efforts were simply "too little, too late." It also

determined that mother could not become fit within a reasonable time because "a reasonable time ha[d] already passed."

¶ 14 The record supports the juvenile court's findings. Four caseworkers testified during the termination hearing, and each said that mother had made little to no progress on her treatment plan. For example,

- the first caseworker testified that, although mother did some drug screens during the Florida case, she refused to engage in substance abuse treatment during that time;

- the second caseworker said that mother denied substance use and refused to engage in treatment;

- the third caseworker reported that the Department made referrals for different evaluations, but mother did not complete any of them; and

- the fourth caseworker stated that mother finally completed a mental health and substance abuse evaluation in May 2024, but she had not followed any of the recommendations.

¶ 15 Based on mother's lack of progress during the case, along with her demonstrated inability to put the children's best interests above

her own, the caseworkers opined that mother was unlikely to become fit within a reasonable time. Specifically, the third caseworker testified that mother had not taken any accountability for her actions, acknowledged how her actions impacted the children, or demonstrated any behavioral changes during the case that would indicate that she could become fit within a reasonable time. Likewise, the fourth caseworker pointed to mother's lack of accountability and behavioral changes in her assessment that mother was unlikely to change in a reasonable time. This caseworker also noted that, when considering the Florida case, mother had well over two years to become fit, but she continued to exhibit the same problems that necessitated government intervention.

¶ 16    Nevertheless, mother maintains that the juvenile court erred because the evidence shows that she had started engaging in treatment at an inpatient facility. But the record indicates that mother entered inpatient treatment less than a month before the termination hearing. And the court considered this evidence but determined that it was insufficient to overcome her demonstrated lack of compliance during most of the case. *See People in Interest of*

*V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (even "increased compliance" over the course of a case may not justify additional time). Consequently, accepting mother's argument would require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See S.Z.S.*, ¶ 29. Rather, because the record supports the court's finding that mother was unlikely to become fit within a reasonable time, we reject her contention.

## C. Family Time

¶ 17    Mother contends that the juvenile court erred by delegating decisions about family time to the parties and that, as a result, it improperly declined to increase her visits. We disagree.

¶ 18    At a temporary custody hearing in the older children's case, a magistrate "authorize[d] up to two supervised parenting time visits per week to last up to one hour." However, the magistrate's written order said that mother "shall have supervised parenting time . . . for two sessions per week, and a minimum of one hour per visit." The written order also allowed for an "increase in time" if agreed upon by the parties.

¶ 19    At a hearing a few months later, mother asked a different magistrate to "add another day of visitation." After hearing argument, the magistrate determined that adding an additional visit was not in the children's best interests and therefore it would not "intervene with parenting time that's been set up now." The magistrate then said that the Department and guardian ad litem (GAL) could "increase time without [the court] intervening." The unsigned minute order from the hearing stated that the magistrate "does not intervene in parenting time and leaves it up to the parties to discuss."

¶ 20    Less than two weeks later, the magistrate adopted treatment plans in both cases that included a family time provision but did not indicate the number of visits, so we will assume that the previous family time schedule in the older children's case applied in both cases. At subsequent review hearings, mother indicated that she was only getting one visit per week, and her counsel said that "we need to really work on getting some more visits."

¶ 21    To begin, the Department and GAL contend that we should dismiss this portion of mother's appeal for lack of a final, appealable order. *See People in Interest of M.W.*, 140 P.3d 231, 233

9

(Colo. App. 2006) ("[T]emporary custody orders are not subject to appeal . . . ."). But a parent may contest issues around family time that form a basis for the juvenile court's termination decision via an appeal of a termination judgment, even if a magistrate entered some of the specific orders throughout the case. *See, e.g., People in Interest of A.A.*, 2020 COA 154, ¶¶ 18-39. And mother's notice of appeal indicates that she is appealing the termination judgment, not the temporary orders entered by the magistrate. Because mother appeals the termination judgment and that judgment is final for purposes of appeal under section 19-1-109(2)(b), C.R.S. 2024, we reject the Department's and GAL's request for dismissal.

¶ 22    The Department and GAL also assert that we should dismiss this portion of the appeal because mother failed to request juvenile court review of the magistrate's family time orders under section 19-1-108(5.5), C.R.S. 2024. *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (a party must petition the juvenile court for review of a magistrate's order before filing an appeal). We disagree because we have already concluded that mother is appealing the termination judgment, not the magistrate's orders, and a juvenile court judge, not a magistrate, entered the

10

termination judgment. Therefore, mother did not need to request review of the magistrate's order before appealing.

¶ 23     Mother asserts that the juvenile court delegated family time decisions by declining to increase her parenting time. *See People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005) (The court must "make decisions regarding visitation, and it may not delegate this function to third parties."). Specifically, mother maintains that the magistrate delegated family time decisions because she declared in a minute order that she would "not get involved in parenting time disputes." We are not persuaded.

¶ 24     As noted, the magistrate specifically found that an additional visit was not in the children's best interests and, for that reason, she declined to "intervene with parenting time that's been set up now." *See A.A.*, ¶ 17 (family time services should be designed to "promote the best interests of the child"). Nevertheless, the magistrate pointed out that the parties did not need further court order to increase visits. Notably, section 19-3-217(2), C.R.S. 2024, of the Colorado Children's Code permits a court to "grant[] discretionary authority to the department and [GAL] to increase opportunities for additional parent-child contacts . . . without

further court order." In other words, the Children's Code permits a court to delegate to the parties decisions about *increasing* parenting time. Thus, we reject mother's assertion.

¶ 25     The present case is unlike *People in Interest of D.G.*, 140 P.3d 299, 304 (Colo. App. 2006), in which a division of this court concluded that the juvenile court erred when it "improperly delegated" visitation decisions to the caseworker and other professionals by approving a treatment plan that allowed them to decide when the parent could have face-to-face visitation with her children. Said another way, the court delegated to the caseworker and the professionals the decision whether the parent would *ever* get visits. In contrast, in the present case, the court did not "delegate decisions to restrict family time," *E.D.*, ¶ 14, which is impermissible; instead, it allowed the parties to agree on increases in family time, which is allowed, *see* § 19-3-217(2).

¶ 26     Mother also contends that the magistrate's initial family time order provided for two visits per week, not "up to" two visits a week, and the Department only provided one visit during a portion of the case. We acknowledge that there is a discrepancy between the oral ruling and the written order. When there is a difference between

the oral ruling and written order, the written order generally controls over the oral ruling. *See S.R.N.J-S.*, ¶ 16.

¶ 27     But even if we conclude that the juvenile court ordered two visits per week rather than "up to" two visits per week, we discern no reversible error because mother has not developed any argument to explain why we should reverse the termination judgment. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004).  For example, nowhere in mother's brief does she assert that the Department failed to make reasonable efforts because it only provided one visit rather than two. *See* § 19-3-208(2)(b)(IV), C.R.S. 2024 (requiring a department to provide family time services to a parent).  And mother has not directed us to any competent evidence establishing that the Department only provided one visit per week. *See Robertson v. People*, 2017 COA 143M, ¶ 43 (noting that statements made by counsel are not evidence).  Rather, two caseworkers said that mother had two visits per week, and paternal grandmother reported that mother recently had three visits scheduled per week.

¶ 28     Finally, even assuming, without deciding, that the Department improperly withheld one visit per week for a few months, we still

13

discern no reversible error. The record indicates that, despite mother's informal request for additional visits, she did not regularly attend her already scheduled visits. Notwithstanding mother's inconsistencies, the Department tried to accommodate her by offering additional opportunities to have contact with her children at their soccer games, but she never attended a game because there was an active warrant for her arrest. Mother does not take issue with any of the other services provided by the Department, and the record clearly shows that she did not substantially comply with any of the other components of her treatment plan. Thus, we conclude that any putative error related to the Department withholding a few visits early in the case was harmless. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 35 (A department's "efforts must be measured holistically rather than in isolation with respect to specific treatment plan objectives."); C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

### III. Disposition

¶ 29    The judgment is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.

14