25CA0267 Peo in Interest of ZG 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0267
Mesa County District Court No. 23JV33
Honorable JenniLynn E. Lawrence, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.G., a Child,

and Concerning T.G. and L.S.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie L. Burt, Guardian Ad Litem

Ainsley E. Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant T.G.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant L.S.

¶ 1    In this dependency and neglect proceeding, T.G. (mother) and L.S. (father) appeal the judgment terminating their parent-child legal relationships with Z.G. (the child).  We affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services (the Department) received a referral raising concerns about domestic violence and substance use in maternal great-grandfather's residence, where mother and the then-three-year-old child were residing.  The intake caseworker met with mother, and mother admitted to using methamphetamine.  Mother was subsequently arrested and entered into a safety plan with the Department, agreeing that the child would remain with maternal great-grandfather and that mother wouldn't return to the residence until she was in a drug rehabilitation program.

¶ 3    After mother's release from jail, she and the child briefly went to a rehabilitation facility.  But she left shortly thereafter and told the intake caseworker that she wanted to leave town.  Concerned that mother would leave with the child, the Department sought, and was granted, temporary legal custody.  When the Department arrived at maternal great-grandfather's residence to pick up the

1

child, mother answered the door — leading the Department to conclude that the safety plan had been violated. The child was placed in foster care and the Department filed a petition in dependency or neglect.

¶ 4    The intake caseworker attempted to communicate with father but didn't receive a response until after the petition had been filed. When the caseworker eventually spoke to father, father explained that, due to his incarceration, he had only ever "met [the child seven] times." Father also disclosed that he had used cocaine two days earlier.

¶ 5    The juvenile court adjudicated the child dependent or neglected and adopted treatment plans for both parents. The treatment plans required both parents to (1) attend family time and a parenting class; (2) participate in mental health and substance abuse treatment; (3) maintain a safe and stable environment for the child; and (4) timely communicate and participate in the treatment process. The treatment plans were later amended to require both parents to comply with all terms and conditions of their criminal cases and/or probation.

¶ 6     The Department moved to terminate the parents' legal relationships with the child.  Twenty months after the petition was filed, the juvenile court held a contested hearing and granted the termination motion.

## II.     Continuance

¶ 7     Mother first contends that the juvenile court abused its discretion when it denied her request to continue the termination hearing.  We perceive no basis for reversal.

### A.     Applicable Law and Standard of Review

¶ 8     The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child."  § 19-1-102(1)(c), C.R.S. 2024.  Thus, when ruling on a motion to continue, the juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency."  *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.  In expedited permanency planning (EPP) cases, such as this one, a court can't grant a continuance unless the moving party establishes (1) good cause for the continuance and (2) that the continuance will serve the child's best interests.  § 19-3-104, C.R.S. 2024.

¶ 9    We review the juvenile court's ruling on a motion to continue for an abuse of discretion. *People in Interest of T.E.M.*, 124 P.3d 905, 908 (Colo. App. 2005). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## B.    Analysis

¶ 10    At the start of the termination hearing, father's counsel requested a continuance that mother's counsel didn't oppose. Father's counsel asserted that additional time was needed to (1) assess permanency based on the child's recent placement change; and (2) prepare for trial based on father's recently completed substance use evaluation. His counsel argued the continuance was in the child's best interests because it would enable father to have more family time while also ensuring the security of a permanent placement if the parents' rights were eventually terminated.

¶ 11    The juvenile court denied the request, finding that it was in the child's best interests to proceed. The court expressed concern that family time had been "dysregulating and disruptive" for the

4

child and that continuing the hearing would entail additional visitation. Ultimately, the court concluded that it would be in the child's best interest to have stability that additional family time wouldn't provide.

¶ 12 The juvenile court considered the reasons presented for the continuance as well as the child's needs. At the time of the termination hearing, the case had been open for twenty months and the child had been out of the home for the entire duration of the case. Before ruling on the request, the third caseworker[1] made an offer of proof, stating that mother's engagement in family time was "intermittent," father had only recently reengaged in family time after over a year of no engagement, and the child was observed to be "very dysregulated" after visits.

¶ 13 We perceive no abuse of discretion because the juvenile court properly weighed the reasons proffered for the continuance, including the child's lack of a permanent placement, against the

---

[1] During the case, there were three ongoing caseworkers. However, only the second and third ongoing caseworkers testified at the termination hearing.

need for prompt resolution of the proceeding and the child's best interests.  *See* § 19-3-104.

### III.    Fitness Within a Reasonable Time

¶ 14    Father contends that the juvenile court erred by finding that he couldn't become fit within a reasonable time.  Specifically, he asserts that at the time of the termination hearing he had completed several of his treatment plan requirements and was "committed to his progress towards his treatment plan objectives." We aren't persuaded.

### A.    Applicable Law and Standard of Review

¶ 15    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. § 19-3-604(2), C.R.S. 2024; *see also People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007).  Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions.  *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).  A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore,

6

may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 16    When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 17    The determination of a reasonable period is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007); *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25. However, a reasonable time isn't an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *Id.* at ¶ 25. Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986).

¶ 18    As in this case, when a child is under six years old, the juvenile court must also consider the EPP provisions, which require that the child be placed in a permanent home as expeditiously as

possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

¶ 19 Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## B. Analysis

¶ 20 The juvenile court found that father had been given eighteen months to comply with his treatment plan, made no significant progress on any of the elements during that time, and that no credible evidence suggested that he would comply if given additional time. In so concluding, the court noted that during the case father didn't maintain a regular schedule of family time, cooperate with the Department, or achieve sobriety.

¶ 21 The record supports the juvenile court's findings. The second caseworker testified that, during her six months on the case, father didn't communicate with her, have any family time with the child, complete any of his treatment plan objectives, or "show up for [the child]." Based on this, she opined that father couldn't become fit

within a reasonable time.  Similarly, the third caseworker expressed that, despite recent progress, father couldn't become fit within a reasonable time.  In so opining, she focused on the expedited nature of the case and the child's need for permanency.

¶ 22    Even so, father asserts that the record compels the opposite conclusion, pointing out that he completed a combined mental health and substance abuse assessment, planned to begin a rehabilitation program, had "somewhat consistent" contact with the third caseworker, and had weekly virtual visits with the child. However, the juvenile court specifically considered the evidence of father's recent treatment plan progress before concluding that his conduct or condition was unlikely to change with additional time. Thus, father's appellate argument would require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we can't do.  *See S.Z.S.*, ¶ 29.

## IV.    Less Drastic Alternative

¶ 23    Finally, both parents assert that the juvenile court erred by finding there were no less drastic alternatives to termination.  We disagree.

9

## A.     Applicable Law

¶ 24     Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3); *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004).  A court may also consider, among other things, (1) whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's ability to care for the child's needs, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) whether the child is bonded with the parent, *see People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009); and (3) whether an allocation of parental responsibilities (APR) provides adequate permanence and stability for the child, *T.E.M.*, 124 P.3d at 910.

¶ 25     For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, it must be in the child's best interests.  *A.M.*, ¶ 27.  Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the

child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 26 The juvenile court found that there was no less drastic alternative to termination. In doing so, the court gave primary consideration to the child's physical, mental, and emotional needs and conditions. The court also considered the child's young age and the upheaval he experienced during the case and found that he needed stability, predictability, structure, and routine.

¶ 27 The record supports the juvenile court's findings. During early visits mother didn't engage well with the child. The second caseworker testified that, for the duration of her time on the case, neither parent had any visits with the child. She expressed concern that the parents weren't aware of the child's needs and hadn't taken steps to mitigate the concerns that led to the Department's involvement. She opined that the child needed permanency and stability because he had not experienced consistency or engagement from the parents. The third caseworker testified that

father restarted family time with the child a few weeks prior to the termination hearing but, before that, he hadn't seen the child in approximately sixteen months. Father testified that he had only seen the child in person "[a]bout five times." The third caseworker explained the child's "high needs" and expressed concern about the impact the parents' inconsistent interactions could have on him. She opined that there was no available less drastic alternative that was in the child's best interests.

¶ 28    Both parents assert that the juvenile court erred by not finding placement with maternal great-grandfather to be a less drastic alternative to termination. But this argument overlooks the court's factual finding that an APR wasn't in the child's best interests because it wouldn't provide him with sufficient stability. In other words, even if maternal great-grandfather was a viable placement option, the court found, with record support, that an APR was still not the best option for the child.

¶ 29    To the extent that mother asserts that keeping the case open was a viable less drastic alternative, the record supports — and mother doesn't challenge on appeal — the juvenile court's findings that she failed to make any significant progress on any element of

her treatment plan and was unlikely to comply given additional time. And, as discussed above, the record supports the juvenile court's finding that the child needed the stability provided by termination and that it would not be in his best interests to continue the hearing. *See T.E.M.*, 124 P.3d at 910.

¶ 30 Both parents also assert that the juvenile court erred because continuing the relationship between the parents and the child was in the child's best interests. But the court found that neither parent maintained consistent family time with the child, observing that mother primarily engaged while she was in treatment and father primarily engaged while incarcerated. These findings are supported by the record. As mentioned above, the parents didn't consistently attend family time. Overall, the third caseworker described the child's visits with the parents as "potentially harmful," expressing concern about the possible impact on the child from the parents' inconsistent engagement. She also testified that the child's visit with mother the day before the termination hearing had to be canceled because of the child's level of dysregulation he exhibited following the preceding visit with father.

The caseworker opined that the child's visits with father were "potentially traumatic" for the child.

¶ 31    Finally, both parents assert that the juvenile court erred by finding that termination of their parental rights would provide the child with stability when he wasn't in a permanent placement. True, it would have been preferable for the child to be placed in a permanent home before the court terminated the parents' rights. But a lack of a permanent placement isn't a bar to termination. *See T.E.M.*, 124 P.3d at 911 (determining that termination was in the children's best interests, even if they weren't ultimately adopted). The juvenile court acknowledged that termination was a "drastic remedy" but found that, considering the child's physical, mental, and emotional conditions and needs, there were no less drastic alternatives.

¶ 32    This finding is supported by the record. The second caseworker testified that, considering the child's age, the length of the case, and the inconsistency of the parents' participation in family time and engagement with treatment, he was in a "limbo stage" and needed to be able to move forward. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) ("Permanent

placement is not a viable less drastic alternative to termination if the children need a stable, permanent home that can only be assured by adoption.").  The third caseworker testified that, considering the child's age and developmental stage, it was important for him to have consistency.  Ultimately, both caseworkers opined that termination was in the child's best interests.

¶ 33 In sum, the record shows that the juvenile court considered less drastic alternatives but rejected them because they were not in the child's best interests.  *See A.M.*, ¶ 32.  And because the record supports the court's finding, we can't disturb it.  *See B.H.*, ¶ 80.

## V.    Disposition

¶ 34 The judgment is affirmed.

JUDGE GROVE and JUDGE JOHNSON concur.