25CA0355 Peo in Interest of VDC 09-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0355
Mesa County District Court No. 22JV97
Honorable Matthew D. Barrett, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of V.D.C., a Child,

and Concerning J.A-P. and D.C.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Andrew A. Gargano, Office of Respondents Parents' Counsel, Denver, Colorado, for Appellant J.A-P.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant D.C.

¶ 1    In this dependency and neglect proceeding, D.C. (father) and J.A-P. (mother) appeal the judgment terminating their parent-child legal relationships with V.D.C. (the child). We affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services (Department) initiated an action in dependency or neglect and assumed temporary legal custody of the newborn child. The Department alleged that the child had tested positive for controlled substances at birth, that mother had not received any prenatal care, and that mother had also tested positive for controlled substances.

¶ 3    The Department moved to adjudicate the child dependent or neglected by summary judgment arguing that the child was born affected by alcohol or substance exposure and that the child's health and welfare was threatened by substance use pursuant to section 19-3-102(1)(g), C.R.S. 2025. The juvenile court granted the motion and adopted treatment plans for the parents.

¶ 4    Father appealed the adjudication. A division of this court reversed after concluding that some of the underlying material facts were disputed and remanded the case for further proceedings. *See*

*People in Interest of V.D.C.*, (Colo. App. No. 23CA369, September 28, 2023) (not published pursuant to C.A.R. 35(e)).

¶ 5　　The juvenile court then held a jury trial. After hearing the evidence, the jury found the Department had proved the child was dependent and neglected on several grounds as to both parents. Based on the jury's verdicts, the court sustained the petition, entered an adjudication, and adopted the same treatment plans for the parents that had been put into place following entry of summary judgment.

¶ 6　　Later, the Department moved to terminate the parents' parental rights. After an evidentiary hearing, and over two years after the petition had been filed, the juvenile court terminated the parents' parental rights.

## II.　Statutory Criteria and Standard of Review

¶ 7　　The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.

§ 19-3-604(1)(c), C.R.S. 2025. A juvenile court must also consider and eliminate less drastic alternatives to termination before entering an order terminating the parent-child legal relationship under section 19–3–604(1)(c). The supreme court has characterized a less drastic alternative as an "implicit" criterion under the statutory scheme. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 19; *see also People in Interest of D.B–J.*, 89 P.3d 530, 531 (Colo. App. 2004).

¶ 8 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts. *A.M.*, ¶ 15. A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 9 However, we will not disturb the court's factual findings and conclusions when they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. The credibility of the witnesses as well as the sufficiency, probative value, and weight of the evidence, and the

inferences and conclusions to be drawn from it are within the court's discretion.  *A.M.*, ¶ 15.

### III.  Less Drastic Alternatives

¶ 10    Both parents contend that the juvenile court erred by finding that there were no last drastic alternatives to termination.  We discern no reversible error.

### A.  Relevant Law

¶ 11    As noted above, the juvenile court must consider and eliminate less drastic alternatives before terminating parental rights.  *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986).  When making this determination, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35.

¶ 12    When deciding whether long-term or permanent placement with a relative or other person is a viable less drastic alternative to termination, the court may consider various factors including whether a permanent placement prefers adoption rather than an allocation of parental responsibilities (APR).  *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31.

4

¶ 13    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs. *A.M.*, ¶ 27. Rather, the proposed alternative must be the "best" option for the child. *Id.* Therefore, if the court considers a less drastic alternative but finds that termination is in the child's best interests, it must reject the proposed alternative and order termination. *Id.* at ¶ 32. Permanent placement may not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption. *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 14    When the juvenile court considers a less drastic alternative and still determines that the termination of parental rights is in the child's best interests, we are bound to affirm that decision if the court's findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 15    The parents assert the juvenile court erred when it found no less drastic alternative to termination existed because, they contend, an APR to maternal aunt was in the child's best interests.

¶ 16    To the contrary, the juvenile court considered less drastic alternatives, including an APR to maternal aunt, but concluded that an APR "would be both wasteful and detrimental to [the child's] best interests." The court further found that it did not believe father or maternal aunt fully understood "how detrimental" transferring the child's placement would be to him.

¶ 17    The caseworker testified that she believed termination was in the child's best interests. An expert in capacity to parent evaluations testified that the child needed permanency, that it was important for him to maintain consistent caregivers, and that it "would be a pretty significant trauma" for the child if his placement was changed. *See A.M.,* ¶ 15. The court found this expert testimony credible.

¶ 18    True, as mother asserts, the child's placement was not without concern. The placement appeared to use an alternative name for the child and would not support relationships with some of the child's extended family. However, the court explicitly considered these concerns and found they did not "rise near the level to make a change in what's going on or to otherwise change the ultimate outcome here." The record further shows that the child was placed

with three of his siblings, was thriving in his placement, and demonstrated a bonded relationship with the placement providers.

¶ 19 Because the court's findings are supported by the record, we will not reverse them. *See A.M.*, ¶ 48 (noting that a court's "determinations regarding permanent placement and its determination that termination was in the child's best interests [are] factual findings entitled to deference, unless unsupported by the record"); *see also Z.M.*, ¶ 32 ("If the record supports the court's findings and conclusions that no less drastic alternatives existed and that termination of parental rights was in the child's best interests, we may not disturb the court's determination.").

¶ 20 Mother further argues the juvenile court could not have determined whether a less drastic alternative existed because the Department failed to adequately investigate maternal aunt as a potential placement.

¶ 21 The court found that the Department had completed its statutory obligations to investigate alternative placements. The record shows maternal aunt was considered for placement early in the case but she withdrew her name from consideration. When maternal aunt learned the rules around qualifications had changed

and her placement would likely be qualified, she again submitted her information. At that time the child had been in the same placement for nearly two years. Nonetheless, a home study was completed shortly before the termination hearing. Although we are troubled by the fact that the caseworker did not appear to have fully read maternal aunt's home study, the record nonetheless shows the Department investigated maternal aunt as a potential placement and the juvenile court ultimately found placement with her would not be in the child's best interests.

¶ 22 Finally, we reject father's argument that the court erred by finding no less drastic alternative existed because the child's placement provider "did not testify that she would refuse to accept an [APR]." First, father points us to no authority, and we are aware of none, that would require the placement provider to testify as to their unwillingness to support an APR before that option may be rejected as a less drastic alternative. Second, the placement provider *did* testify that they would adopt the child. Third, in rejecting an APR arrangement, the court explicitly found that an ongoing relationship with the parents was not in the child's best interests. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 38 (A

court may also consider whether an ongoing relationship between the parent and child would be beneficial or detrimental).  Thus, even if placement was willing to participate in an APR, it would not be in the child's best interests.

## IV.    Reasonable Time

¶ 23    Father contends that the juvenile court erred when it found his conduct or condition was unlikely to change within a reasonable time.  We disagree.

### A.    Relevant Law

¶ 24    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.*, 160 p.3d 351, 353 (Colo. App. 2007).  At a minimum, reasonable parental care requires that a parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 9.

¶ 25    Before a court can terminate the parent-child relationship, there must be clear and convincing evidence that the parent cannot become fit within a reasonable period of time.  § 19-3-604(1)(c)(III).

9

¶ 26    A reasonable period of time is not an indefinite time but must be considered based on the physical, mental, and emotional conditions and needs of the child. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). When determining whether a parent may become fit within a reasonable time, the "court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 27    If a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986). When, as here, a child is under six years old, the court must consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

## B. Analysis

¶ 28 The juvenile court found that "[b]oth parents had well over two years at this point to work on the plan," and that father "made it clear in his testimony that he doesn't believe he's done anything wrong and certainly doesn't believe that there's any need for the services to be undertaken." The court further found that "[a]t the end of the day, [the parents'] actions and inactions reflect how chronic the issues are for the parents and how poorly motivated both of them are to change." Thus, the court held that "considering how little progress the parents have made on their treatment plans, the [c]ourt finds the parents are not fit and will not become fit within a reasonable time."

¶ 29 The record supports the court's findings. True, as father asserts, the child appeared bonded to father and his family time was reportedly positive with no safety concerns. He also successfully completed parent-child therapy and maintained stable and consistent employment. However, father's compliance with his treatment plan stopped there.

¶ 30 The record shows that father failed to engage in substance monitoring, refused to meet with the caseworker, did not complete a

11

combined mental health and substance use evaluation or a parenting class, stopped engaging with the Life Skills worker, and had inconsistent engagement in family time. While father did complete a capacity to parent evaluation, it took him eight months and he failed to follow through on any of its recommendations.

¶ 31　The caseworker opined father could not comply within a reasonable period of time because "[father] has [shown] the entire two, almost two-and-a-half years that this case has been open, that he's not going to comply with the treatment plan." She further testified she believed termination was in the child's best interests and that the child "needs a safe, sober parent who is able to maintain appropriate boundaries and be a very protective parent," and that she had "not seen that from either parent."

¶ 32　Because the court's findings are supported by the record and its conclusions comport with applicable law, we decline to disturb the judgment. *See People in Interest of C.T.S.*, 140 P.3d 332, 334 (Colo. App. 2006); *see also A.M.*, ¶ 15.

V.　Disposition

¶ 33　The judgment is affirmed.

JUDGE WELLING and JUDGE JOHNSON concur.