25CA1173 Peo in Interest of EED 01-15-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1173
Arapahoe County District Court No. 23JV89
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.E.D., a Child,

and Concerning V.P. a/k/a V.D. and M.D.,

Appellants.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

---

Ron Carl, County Attorney, Erinn Walz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant V.P.

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant M.D.

¶ 1     V.P., also known as V.D. (mother), and M.D. (father) appeal the judgment terminating their parent-child legal relationships with E.E.D. (the child).  We affirm.

## I.     Background

¶ 2     In 2023, the Arapahoe County Department of Human Services (the Department) became involved with the family following reports about the parents' substance use and the family's living conditions. Soon after, the juvenile court granted the Department temporary legal custody of the then-three-year-old child, and the Department filed a petition in dependency or neglect.  The court adjudicated the child dependent and neglected and adopted treatment plans for the parents.

¶ 3     The Department later moved to terminate parental rights. More than two years after the Department filed the petition and after a three-day evidentiary hearing, the juvenile court granted the motion.

¶ 4     Mother and father appeal the termination judgment, though for different reasons.

## II.    Termination Criteria and Standard of Review

¶ 5    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan, or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 6    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  We review the juvenile court's findings of evidentiary fact for clear error, but we review de novo the juvenile court's legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 7    The credibility of the witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn therefrom are within the discretion of the juvenile court. *A.M.,* ¶ 15.

### III. Mother's Contentions

¶ 8     Mother contends that the juvenile court erred by finding that she (1) did not comply with her treatment plan and (2) was unfit and could not become a fit parent within a reasonable time.

### A. Treatment Plan Compliance

¶ 9     We first consider and reject mother's contention that she substantially complied with her treatment plan.

¶ 10     Mother's treatment plan required her to demonstrate, among other things, communication with the Department, sobriety, stability, protective parenting, and legal compliance. The family-time worker testified that mother's family time remained supervised throughout the case, and her engagement was "inconsistent." During visits, the family-time worker witnessed mother promising the child that she would be returning home, which had a demonstrably negative effect on the child, leading to days of dysregulation, impacts on her school attendance, and changes in her overall behavior. Despite direction from the family-time worker, mother continued to make such promises to the child. One week before the termination hearing, mother's promises escalated to the point that the Department involved law enforcement and ended the

visit early due to concerns about the child's emotional well-being. A caseworker opined that mother was not compliant with the protective parenting objective of her treatment plan, in part, because she was unable to recognize the negative impact her inconsistent behavior and unrealistic promises had on the child.

¶ 11 Beyond mother's inability to provide protective parenting, the caseworker also described mother's noncompliance with her other treatment plan objectives. The caseworker specifically testified that mother was unwilling to communicate with the caseworker during the last six months of the case, refused to allow her to conduct a home visit in the months before the termination hearing, stopped attending therapy after a few sessions, did not demonstrate sobriety throughout the case, and had outstanding warrants.

¶ 12 While mother points to evidence showing she complied with some portions of her treatment plan, the juvenile court considered this evidence and weighed it against the evidence showing mother had not meaningfully engaged in the treatment plan. We, of course, may not reweigh the evidence. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

¶ 13    Because significant evidence supports the court's finding that mother did not substantially comply with her treatment plan, we will not disturb the ruling.

## B.    Fitness Within a Reasonable Time

¶ 14    We next reject mother's contention that the juvenile court erred by finding that she was unfit and could not become fit within a reasonable time.

¶ 15    An unfit parent is one whose conduct or condition renders her "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2).

¶ 16    To determine whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *S.Z.S.*, ¶ 24.  A reasonable time is not an indefinite time and must be determined by considering the child's needs.  *Id.* at ¶ 25.  When a parent has made little progress on a treatment plan, the court is not required to give the parent

additional time to comply.  *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986).

¶ 17    Mother argues that because she substantially complied with her treatment plan, she "could have become fit in a reasonable time."  But, as discussed, the court did not find that mother substantially complied with her treatment plan, and the record supports that finding.

¶ 18    The caseworker opined that it would take mother "at least" six to twelve months to become fit if she consistently and meaningfully engaged in treatment but that mother had not demonstrated an ability or willingness to do that during the two years the case had been open.  And the caseworker expressed concern about the emotional dysregulation the child had experienced throughout the case and testified that giving mother additional time to become fit was not in the child's best interests and would be detrimental to the child.[1]

---

[1] To the extent mother suggests the Department should have made "accommodations" to arrange substance use testing that addressed her "cultural beliefs," we don't address that argument because it was not raised before the juvenile court.  *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25.

6

¶ 19     Given this, the record supports the court's finding that mother was unlikely to become fit within a reasonable time.  We therefore will not disturb it.

IV.   Father's Contentions

¶ 20     Father asserts that the juvenile court erred by finding that (1) his treatment plan was appropriate; (2) he did not comply with his treatment plan and was unlikely to become fit within a reasonable time; (3) the Department made reasonable efforts to rehabilitate him and reunify him with the child; (4) there was no less drastic alternative to termination; and (5) a continuance of the termination hearing was not appropriate.  We address, and reject, these contentions in turn.

A.   Appropriateness of the Treatment Plan

¶ 21     During the two years that the case was open, father was in and out of custody in various jurisdictions.  Father now contends that the juvenile court erred by concluding that his treatment plan was appropriate because the plan did not "contemplate his incarceration."

¶ 22     Though the parties dispute preservation, we need not determine whether father preserved his argument (or was required

to do so) because, even if we assume the argument was preserved, we see no basis for reversal.

¶ 23    A treatment plan is appropriate if it is reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time, and it relates to the child's needs. § 19-1-103(12), C.R.S. 2025.  We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, "which must be assessed in light of the facts existing at the time of the plan's approval."  *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005).  A parent's incarceration does not "prohibit the creation and implementation" of an appropriate treatment plan, but it may "render more difficult the crafting of a meaningful and workable plan."  *People in Interest of M.C.C.*, 641 P.2d 306, 309 (Colo. App. 1982).

¶ 24    Although father generally argues that the treatment plan did not contemplate his incarceration, he does not dispute that all his treatment plan components were necessary to address the child's needs.  *See People in Interest of K.B.*, 2016 COA 21, ¶¶ 22-23 (directing the juvenile court to consider on remand whether the parent's treatment plan was inappropriate because it did not

8

include a component addressing domestic violence). Nor does father explain how he could have addressed the identified safety concerns without completing the treatment plan objectives. *See id.* at ¶ 14 ("In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns identified during the assessment of the family."). And father identifies no modifications to his treatment plan that the Department could or should have made to address the periods during which father was incarcerated.

¶ 25 While we recognize that father could not complete some of the plan's action steps while incarcerated, father was not continuously incarcerated. Indeed, father ignores the five months that he was in community corrections — where he had greater access to services, including drug testing — and the fourteen months when he was out of custody entirely, including the eight months before the termination hearing. Given that father was not incarcerated during the entire pendency of this case, we don't see — and father doesn't say — how his treatment plan was inappropriate to render him a fit parent in a reasonable time.

¶ 26    Therefore, we conclude that father failed to establish that his treatment plan was inappropriate.

## B.    Treatment Plan Compliance and Fitness

¶ 27    Father's treatment plan required him to demonstrate, among other things, communication with the Department, sobriety, stability, protective parenting, and legal compliance.

¶ 28    A caseworker testified that father (1) often failed to respond to Department communications or appear at scheduled meetings; (2) did not complete a substance use and mental health evaluation; (3) did not submit to drug testing other than in community corrections; (4) was inconsistent with family time and had not seen the child in seven months; (5) had not informed the caseworker where he lived or provided recent proof of employment; and (6) had an outstanding warrant.  The caseworker opined that father had not complied with his treatment plan objectives or become fit.

¶ 29    Father argues that he complied with the treatment plan by pointing to his progress on some aspects of the treatment plan, including employment and housing.  Though the court acknowledged some progress, after weighing all the evidence, the court found no "indication . . . that [father] is sober" or "an

appropriate caregiver." *See People in Interest of K.T.*, 129 P.3d 1080, 1082 (Colo. App. 2005) (noting that unfitness may be premised on a parent's failure to document sobriety). Thus, it held that father did not successfully complete his treatment plan.

¶ 30     Father briefly argues in the alternative that, "to the extent [he] did not demonstrate fitness," he could have become fit within a reasonable time. But the court rejected this claim, given the minimal progress father made during the case.

¶ 31     Because substantial evidence supports the court's findings that father did not successfully complete his treatment plan and could not become fit within a reasonable time, we will not disturb them.

## C.     Reasonable Efforts

¶ 32     The juvenile court found that the Department made reasonable efforts to rehabilitate father, including submitting referrals for father to complete his evaluations, engage in treatment, and attend family time. Father disagrees and argues that the Department did not make reasonable efforts because it failed to (1) consistently communicate with him; (2) provide appropriate family time; and (3) connect him with service providers.

11

¶ 33     To determine whether a parent is unfit, the juvenile court

must consider whether a department made reasonable efforts to

rehabilitate the parent and reunite the family.  *See*

§§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S.

2025.  "Reasonable efforts" means the "exercise of diligence and

care."  § 19-1-103(114).  A department satisfies its reasonable

efforts obligation if it provides services in accordance with section

19-3-208.  § 19-1-103(114).  As necessary and appropriate, those

services include screenings, assessments, and individual case

plans; home-based family and crisis counseling; information and

referral services; family time services; and placement services.

§ 19-3-208(2)(b)(I)-(V).

¶ 34     When evaluating a department's efforts, the juvenile court

should consider whether the services provided were appropriate to

support the parent's treatment plan.  *People in Interest of E.D.*,

2025 COA 11, ¶ 11.  But the parent is ultimately responsible for

using those services to obtain the assistance needed to comply with

the treatment plan.  *Id.* at ¶ 12.  Thus, a court may consider a

parent's unwillingness to participate in treatment in determining

whether the department made reasonable efforts. *People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 35 Whether a department made reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and its legal determination based on those findings de novo. *Id.*

### 2. Communication

¶ 36 Father argues that the Department failed to properly communicate with him during his incarceration, which resulted in his inability to fully comply with his treatment plan.

¶ 37 While it's true that the caseworkers had difficulty tracking father while he was in custody and did not consistently meet with father while he was incarcerated, the record reflects that the caseworkers had several in-person meetings with father, reached out to him via phone and text message on numerous occasions, and conducted diligent searches to locate him. Yet, the caseworker testified that father often ignored the Department's attempts to contact him, did not respond to communications, and did not attend scheduled meetings. The caseworker said that the Department tried to remain in contact with father and

communicated with his probation officer and the facilities where he was incarcerated.

¶ 38    Because father failed to communicate with the caseworkers when he was not in custody and failed to update the Department as to his location throughout the case, we are unpersuaded that the Department failed to use reasonable efforts to communicate with father.  *See A.V.*, ¶ 12.

¶ 39    Father now also claims a "reliance interest" in the treatment plan and argues that "the law of the case" and the Colorado Department of Human Services rules required monthly in-person meetings.  But father didn't raise these arguments before the juvenile court, and we will not consider them for the first time on appeal.  *See People in Interest of C.E.*, 923 P.2d 383, 385 (Colo. App. 1996) (holding that we do not consider issues raised for the first time on appeal in dependency and neglect cases).[2]

---

[2] Although we don't address father's arguments, we observe that one of the rules father cites specifically exempts monthly face-to-face contact "[w]hen the [parent's] whereabouts are not known despite efforts to locate the [parent]," as was periodically the case here.  Dep't of Hum. Servs. Rule 7.204(B)(2)(c), 12 Code Colo. Regs. 2509-3.

### 3.    Family Time

¶ 40    Father next claims that he did not receive family time during the intermittent periods he was incarcerated during the case.  But the record shows that the Department was limited in its ability to arrange family time during these periods.  For instance, at least one jail denied visitation.  And the caseworker testified that some of father's periods of incarceration were too short to arrange family time.  The record also shows that father did not update the Department as to his location and status, which affected the Department's ability to arrange family time.

¶ 41    What's more, the caseworker testified that even when father was not in jail, he was not consistent with family time.  For example, when father was placed in community corrections, his failure to consistently communicate with the Department affected its ability to arrange visits.  And even when in-person visits were scheduled, father failed to appear.  Father claimed he could not get passes to leave community corrections, but he only provided notice of this barrier to the Department after he missed the visits.  The Department then tried to set up phone visits, but father ignored the calls.

¶ 42　　Even after his release from community corrections, father attended just three in-person family time sessions before he stopped going. A couple of months later, father wanted to restart family time. Though the parties dispute why family time did not immediately restart, it was for the juvenile court to consider and weigh the evidence. To the extent father asks us to reweigh or draw different inferences from the evidence, we will not do that.

¶ 43　　We are equally unpersuaded by father's contention that the Department "lumped [him] in" with mother when seeking to restrict family time and "gave up" on scheduling visits due to the pending termination hearing. One week before the termination hearing, the Department sought a restriction of family time based on the child's severe dysregulation following family time and concerns for her emotional well-being. In support, the family-time worker testified that father missed more than half of his visits and had not seen the child in almost five months. The court concluded that father had — independent of mother — "inconsistency issues" that impacted the child and justified the restriction.

¶ 44　　The court properly considered the Department's efforts to arrange family time throughout the case — both when father was in

16

and out of custody. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35 (stating that a juvenile court's determination of whether a department made reasonable efforts must be based on the totality of the circumstances). Because the record supports the court's conclusion that the Department made reasonable efforts, we will not disturb the ruling.

### 4. Connection with Service Providers

¶ 45 Father asserts that the Department failed to (1) provide him with a referral to an evaluator closer to his community corrections facility for completion of his substance use and mental health evaluation; (2) timely communicate with the facility regarding available services; and (3) offer housing assistance and resources following his release.

¶ 46 But again, father was not in custody for portions of the case, and he does not explain why he could not complete the previously ordered evaluation when he was not in custody — including the eight months between his release and the termination hearing. And, in any event, the record shows that the caseworker tried, on several occasions, to communicate with community corrections but did not receive a timely response. Finally, father informed the

caseworker that he had a place to stay upon his release. *See* § 19-3-208(2)(b) (requiring referrals to public and private assistance resources only if they are determined to be necessary and appropriate).

¶ 47    Considering the totality of the circumstances, we conclude that the juvenile court did not err by finding that the Department made reasonable efforts to rehabilitate father and reunify him with the child.

## D.    Less Drastic Alternatives

¶ 48    Father contends that the juvenile court erred by finding no less drastic alternatives to termination existed. He maintains that the court could have ordered an allocation of parental responsibilities (APR) to his brother. We disagree.

¶ 49    Implicit in the statutory criteria for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). When considering less drastic alternatives, the court bases its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 50    For a less drastic alternative to be viable, it must be the "best" option for the child.  *A.M.*, ¶ 27.  For that reason, if the court considers a less drastic alternative but finds that termination is in the child's best interests, it *must* reject the less drastic alternative and order termination.  *Id.* at ¶ 32.  We are bound by that determination.  *See People in Interest of B.H.*, 2021 CO 39, ¶ 80.

¶ 51    The record supports the juvenile court's finding that no available less drastic alternative would have met the child's physical, emotional, and mental health needs.  The caseworker described the child's significant mental health needs, the negative impacts caused by father's inconsistent family time attendance, and the child's need for permanency and stability.  The caseworker questioned father's ability to consistently attend visits if the court ordered an APR and expressed concern that the "constant . . . in and out" would be too much for the child to handle.  And the caseworker concluded that an ongoing relationship between father and the child would be detrimental, and an APR was not in the child's best interests.  Though father largely ignores this evidence, it supports the court's finding that no viable less drastic alternative to

termination existed. And because the evidence supports the finding, we must affirm it. *See id.*

¶ 52 Still, father contends that an APR to his brother was a viable less drastic alternative, and the Department should have done more to investigate that option. But that argument doesn't address the court's finding that no alternative would meet the child's physical, emotional, and mental health needs. Because the court found that termination was in the child's best interests, whether father's brother (or any relative) would accept an APR doesn't matter. *See A.M.*, ¶ 27 ("[I]f a proposed alternative to termination is to be deemed viable, it must not only be adequate, it must be in the child's best interests.").

¶ 53 We conclude that the record supports the juvenile court's finding that an APR was not a viable less drastic alternative to termination.

### E. Continuance

¶ 54 At the time of the termination order, there was a pending inquiry under the Interstate Compact on the Placement of Children (ICPC) to determine whether placement with father's brother would

be suitable.[3]  Father asserts that "[*a*]*ssuming* that the juvenile court could not rule that a less drastic alternative existed because an ICPC had not yet been completed," the court erred by denying his request to continue the termination hearing.  (Emphasis added.)  We disagree for two reasons.

¶ 55     First, father's premise is incorrect.  The completion of the ICPC did not prevent the court from determining whether a less drastic alternative to termination existed.  And because the court concluded that termination was in the child's best interests, an APR to any individual was not a viable less drastic alternative.  Thus, the ICPC status had no effect on that decision.

¶ 56     Second, the case had been pending for two years.  In denying the requested continuance, the juvenile court properly balanced the need for orderly and expeditious administration of justice against the facts underlying the request and the child's best interests, including her need for permanency.  *See People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.  The court considered the request along with the

---

[3] Father's brother initially expressed interest in being a placement option but then withdrew from consideration.  On the second day of the termination hearing, the brother again expressed interest and the Department then initiated the ICPC.

child's needs, including the "extreme negative impact" family time had on her.  Based on the evidence, we cannot say that the court abused its discretion by denying the requested continuance.

¶ 57    Finally, to the extent father generally asserts a violation of his procedural or substantive due process rights, he hasn't developed these arguments.  We therefore do not consider them.  *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address undeveloped arguments).

## V.    Disposition

¶ 58    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE KUHN concur.